**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 20-14451-CV-MIDDLEBROOKS

FREDERICK HENRY,

    Plaintiff,

v.

NOEL STEPHENS, in his official capacity as Sheriff
of Okeechobee County and BRANDON WILSON, in
his official and individual capacities,

    Defendants.
_____/

**ORDER ON MOTIONS TO DISMISS**

THIS CAUSE comes before the Court on Defendant Noel Stephens's ("Sheriff Stephens") Motion to Dismiss Counts II – IV of the Amended Complaint, filed on April 5, 2021 (DE 22) and Defendant Brandon Wilson's ("Officer Wilson") Motion to Dismiss Counts I – IV of the Amended Complaint, filed April 14, 2021 (DE 25). Both Motions are fully briefed. (DE 27; DE 28; DE 33; DE 34). For the following reasons, Sheriff Stephens's Motion is granted in part and denied in part, and Officer Wilson's Motion is granted.

**BACKGROUND**

On November 11, 2018, Plaintiff Frederick Henry ("Plaintiff"), a paraplegic, was transported to the Okeechobee County Jail to be held as a pretrial detainee. (DE 20 ¶¶ 16–17). The Okeechobee County Sheriff's Office ("OCSO") provided Plaintiff with a wheelchair; however, the wheelchair could not fit through the entrance of the holding cell. (*Id.* ¶ 18). As a result, Officer Wilson placed Plaintiff in a room designated for attorneys to meet with their clients. (*Id.* ¶ 19). Because this room did not have a bed or any assistive devices, Officer Wilson put a mattress on

1

top of the desk and helped Plaintiff to get on the mattress so he could sleep. (*Id.* ¶¶ 20–21). During the night, Plaintiff fell off the mattress and hit the floor. (*Id.* ¶ 22). Plaintiff advised Officer Wilson that he was injured and required medical attention, and at first, Officer Wilson refused treatment and instructed him "to remain lying on the floor with the mattress." (*Id.* ¶ 23). After Plaintiff continued to complain about pain in his legs and back, he was transported to the Raulerson Hospital. (*Id.* ¶ 24). Plaintiff was diagnosed with sprains of his neck, hip, and back, knee pain, and a contusion. (*Id.* ¶ 25).

Plaintiff now brings four counts against Defendants: (1) Negligence; (2) "Violation of the United States Constitution Eighth and Fourteenth Amendments 42 U.S.C. § 1983"; (3) "42 U.S.C. § 1983 Failure to Train"; and (4) "Americans with Disabilities Act § 202/42 U.S.C. § 12132." (*Id.* ¶¶ 27–56).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the allegations in a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing legal sufficiency, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe the complaint in the light most

favorable to the plaintiff and assume the truth of the plaintiff's factual allegations. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for purposes of determining whether a claim is legally sufficient). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level." *Id.*

## DISCUSSION

### I. Negligence

Plaintiff asserts a negligence claim against Defendants. Sheriff Stephens has filed an Answer as to that count (DE 23), and Officer Wilson has moved to dismiss the count as to him on the basis of sovereign immunity.

Fla. Stat. § 768.28(9)(a) provides:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, *unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property*. . . The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

3

Fla. Stat. § 768.28(9)(a) (emphasis added). Florida courts have equated "bad faith" as used in § 768.28(9)(a) with actual malice, *Peterson v. Pollack*, 290 So. 3d 102, 109 (Fla. 4th DCA 2020), and "malicious purpose" with "the subjective intent to do wrong." *Parker v. State Bd. of Regents ex rel. Fla. State Univ.*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998). "Wanton and willful disregard of human rights, safety, or property" means conduct that is intentional, knowing, and purposeful and done with a conscious and intentional indifference to consequences and with knowledge that damage is likely to be done to persons or property." *Peterson*, 290 So. 3d at 110.

To the extent that Plaintiff brought his negligence claim against Officer Wilson in his individual capacity, I find that the claim is barred by sovereign immunity. While Officer Wilson's idea to place Plaintiff on a mattress on top of a desk was certainly a poor choice, the allegations do not assert or support the reasonable inference that Officer Wilson acted in bad faith, with malicious purpose, or with wanton and willful disregard of human rights, safety, or property in so doing. To the extent that Plaintiff has sued Officer Wilson in his official capacity on the negligence claim, Plaintiff's claim is also barred by sovereign immunity, given that he is not the head of the OCSO or its constitutionally elected official. *See* Fla. Stat. § 768.28(9)(a). Accordingly, Plaintiff's negligence claim against Officer Wilson is dismissed with prejudice.

**II. "Violation of the United States Constitution Eighth and Fourteenth Amendments 42 U.S.C. § 1983" (Count II) and "42 U.S.C. § 1983 Failure to Train" (Count III)**

In Count II, Plaintiff alleges that he "was denied adequate conditions of confinement for his disability and medical care" and that Defendants were "deliberately indifferent as to the level of compliance with the American[s] with Disabilities Act, wheel-chair accessible facilities, and reasonable accommodations for its pretrial detainees." (DE 20 ¶¶ 33, 36). Thus, though less than precise, Plaintiff appears to allege that Defendants violated Plaintiff's constitutional rights by

acting with deliberate indifference in providing inadequate conditions of confinement and failing to immediately respond to his medical need.

As a preliminary matter, Plaintiff was a pretrial detainee, not a convicted prisoner, so the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment's Cruel and Unusual Punishment Clause, governs Plaintiff's conditions of confinement claim. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of … pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."). Nevertheless, in determining whether conditions of confinement violate the Constitution, "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees." *Id*. Therefore, if Defendant's conduct violated the Eighth Amendment, it also violated the Fourteenth Amendment. *Id*.; *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner.").

**B. Sheriff Stephens**

Plaintiff seeks to impose municipal liability on Sheriff Stephens for the alleged constitutional violations. Under 42 U.S.C. § 1983, a person who violates the constitutional rights of another while acting under color of state law is liable for the injured party's losses. 42 U.S.C. § 1983. "A § 1983 defendant who abuses the power and authority given to her by the state acts under color of state law." *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1268 (11th Cir. 2012). Not all acts by state employees are under the color of law; "[t]he dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting as a private

individual." *Edwards v. Wallace Comm. College*, 49 F.3d 1517, 1523 (11th Cir. 1995). A state official "acts under color of law 'when he acts with authority possessed by virtue of his employment' with the government or 'the manner of his conduct . . . makes clear that he was asserting the authority granted him and not acting in the role of a private person.'" *United States v. House*, 684 F.3d 1173, 1200 (11th Cir. 2012) (quoting *Almand v. DeKalb Cty.*, 103 F.3d 1510, 1513 (11th Cir. 1997); *Williams v. United States*, 341 U.S. 97, 100 (1951)) (alteration in original).

A municipality cannot be held responsible under § 1983 for the wrongful actions of its officers or employees under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Instead, a municipality may only be liable for the actions of its employees when the alleged constitutional violation is caused by the municipality's custom or policy. *Id.* To impose § 1983 liability on a municipality, then, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A plaintiff need not allege that a municipality has a formal, written policy of discrimination or constitutional violations, but can allege "persistent and widespread discriminatory practices" that amount to a custom or policy. *Monell*, 436 U.S. at 691. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citations omitted). "In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). "[R]andom acts or isolated

incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). Alternatively, "§ 1983 liability may be premised upon a single illegal act by a municipal officer . . . when that municipal officer possesses final policymaking authority over the relevant subject matter." *Scala v. City of Winter Park*, 116 F.3d 1396, 1397 (11th Cir. 1997).

"[M]unicipal liability also may be based on a claim of inadequate training where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants [such that the failure to train] can be properly thought of as a city policy or custom that is actionable under § 1983." *Sewell*, 117 F.3d at 489–90 (citation and internal quotation marks omitted). "[W]ithout notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998). Notice will generally be established by a pattern of similar constitutional violations by untrained employees. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015).

As Sheriff Stephens correctly points out, the Amended Complaint fails to identify any incident of similar misconduct, other than Plaintiff's, that would establish a custom or practice to support a claim under *Monell*. (DE 22 at 8–9). Rather, the Amended Complaint sets forth conclusory allegations that the OCSO has a custom of allowing the misconduct at issue to regularly occur without alleging any specific instances of those other purported constitutional violations. (*See, e.g.*, DE 20 ¶ 35 ("Prior to November 11, 2018 [Sheriff Stephens] permitted, encouraged, tolerated, and ratified a pattern of practice or custom to permit custodial deputies to engage in misconduct and violate the Constitutional rights of citizens, as well as failing to make the Okeechobee Jail holding facility wheel-chair accessible under the American[s] with Disabilities

Act.")). This is not enough to establish a pattern of deliberate indifference and thus to state a claim for municipal liability against Sheriff Stephens. "A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011). "A pattern of similar constitutional violations . . . is 'ordinarily necessary[.]'" *Gurrera v. Palm Beach Cty. Sheriff's Off.*, 657 F. App'x 886, 893 (11th Cir. 2016) (first alteration in original) (citation omitted). Here, "[s]etting aside his conclusory allegations, Plaintiff fails to identify any examples beyond his own [incident] of widespread unconstitutional conduct." *See id.* (citation omitted).

Relatedly, because the Amended Complaint does not allege any other incident of similar abuses, it fails to establish or allow for the reasonable inference that Sheriff Stephens was on notice of a need to train his officers in this area but intentionally chose not to take any action. As such, Plaintiff's municipal liability claim under a theory of failure to train is not viable as presently pled.

Therefore, I will dismiss Counts II and III of the Amended Complaint as brought against Sheriff Stephens in his official capacity without prejudice.[1]

### B. Officer Wilson

Plaintiff brings his federal claims (Counts II, III, and IV) against Officer Wilson in both his individual and official capacities. As a threshold matter, Count III—42 U.S.C. 1983 Failure to Train—is not properly brought against Officer Wilson, as he did not have a responsibility to train himself, and the Complaint does not indicate that he was acting in a supervisory capacity with his

---

[1] Because I find that Plaintiff has failed to plausibly allege a claim for municipal liability under *Monell*, to conserve judicial resources, I do not reach Sheriff Stephen's argument that Plaintiff has failed to allege a constitutional violation. If Plaintiff cannot allege a pattern of purported constitutional violations, I need not determine whether the alleged abuses amount to deliberate indifference to inadequate conditions of confinement or medical need.

subordinates committing constitutional violations. As such, Count III against Officer Wilson in his individual and official capacities is dismissed with prejudice.

*Official Capacity.* Officer Wilson argues that Plaintiff's federal claims against him in his individual capacity in Counts II, III, and IV should be dismissed as duplicative because Plaintiff also brought those claims against Sheriff Stephens. I agree. "In contrast to individual capacity suits, when an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Id.* And "[b]ecause suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond)." *Id.*; *see also Cook ex-rel. Estate of Tessier v. Sheriff of Monroe Cty. Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005) ("When, as here, the defendant is the county sheriff, the suit is effectively an action against the governmental entity he represents . . . ."). Plaintiff has also brought his federal claims against Sheriff Stephen in his official capacity and therefore bringing the same claims against Officer Wilson in his official capacity is redundant. Accordingly, to the extent that Plaintiff asserts Counts II through IV against Officer Wilson in his official capacity, those claims are dismissed with prejudice.

*Individual Capacity.* In Count II of the Amended Complaint, Plaintiff alleges that Officer Wilson violated Plaintiff's constitutional rights due to his deliberate indifference to his inadequate conditions of confinement and, potentially, though imprecise, deliberate indifference to a medical need.

The Eighth Amendment, which applies to the states through the Fourteenth Amendment, protects against cruel or unusual punishment. U.S. Const. amend. VIII; *Chandler v. Crosby*, 379 F.3d 1278, 1288 n.20 (11th Cir. 2004). This protection is violated when the conditions of a prisoner's confinement "involve the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).

A two-part analysis governs challenges to conditions of confinement. *Quintanilla v. Bryson*, 730 F. App'x. 738, 746 (11th Cir. 2018). "First, the conditions of confinement must be objectively 'serious' or 'extreme,'" meaning that 'the prisoner 'must show that a condition of his confinement pose[s] an unreasonable risk of serious damage to his future health or safety.'" *Id.* (citing *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004)). "Conditions are objectively serious or extreme if they amount to a deprivation of the 'minimal civilized measure of life's necessities' or 'the basic human needs', including 'reasonable adequate food, clothing, shelter, [] sanitation' [medical care and personal safety]. . . ." *Id.* (citation omitted). The risk of harm from the condition must be "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Carter v. DeKalb Cty., Ga.*, 521 F. App'x 725, 729 (11th Cir. 2013) (quoting *Chandlerv. Crosby*, 379 F.3d 1278, 1909 (11th Cir. 2004)). The length of time the individual is exposed to the inadequate condition "is significant because a condition might be tolerable for a few days but intolerable over a long period." *Quintanilla*, 730 F. App'x. at 746.

"Second, the prisoner must show that the defendant prison officials subjectively acted with 'deliberate indifference' with regard to the conditions at issue." *Id.* "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (citations omitted). "[I]mputed or collective knowledge cannot serve as the basis for a

10

claim of deliberate indifference. Each individual Defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor,* 533 F.3d 1325, 1331 (11th Cir. 2008).

In addition, deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Brennan v. Headley,* 807 F. App'x 927, 934 (11th Cir. 2020) (per curiam) (citing *Estelle,* 429 U.S. at 104). However, "the Constitution doesn't require that the medical care provided to prisoners be 'perfect, the best obtainable, or even very good.'" *Keohane v. Fla. Dep't of Corr. Sec'y,,* 952 F.3d 1257, 1266 (11th Cir. 2020) (quoting *Harris v. Thigpen,* 941 F.2d 1245, 1510 (11th Cir. 1991)). Thus, "medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris,* 941 F.2d at 1505.

Similar to an inadequate conditions of confinement claim, to prevail on a deliberate indifference to medical need claim, Plaintiff must demonstrate: (1) an objective component by showing he has a serious medical need; and, (2) a subjective component, by showing the prison official acted with deliberate indifference to that need. *See Estelle*, 429 U.S. at 104-05; *Brennan,* 807 F. App'x at 934 (citing *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003)); *Wright v. Langford,* 562 F. App'x 769, 778–79 (11th Cir. 2014) (per curiam) (citing *Burnette v. Taylor,* 533 F.3d 1325, 1330 (11th Cir. 2008)). There must also be evidence of causation between the defendants' indifference and the plaintiff's injury. *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1306-07 (11th Cir. 2009).

Officer Wilson seeks dismissal of Plaintiff's 42 U.S.C. § 1983 inadequate conditions of confinement claim and/or deliberate indifference to medical need claim brought against Officer

Wilson in his individual capacity on the grounds that the alleged conduct did not amount to a constitutional violation and that qualified immunity applies. Because I find that qualified immunity bars Plaintiff's claims against Officer Wilson in Count II, I need not address whether Officer Wilson violated Plaintiff's constitutional rights.

"Qualified immunity shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019) (citation omitted). It "protect[s] from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" *Id.* (alteration in original) (citation omitted). "To deny qualified immunity at the motion to dismiss stage, [the court] must conclude both that the allegations in the complaint, accepted as true, establish a constitutional violation and that the constitutional violation was 'clearly established.'" *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019) (emphasis in original) (citation omitted). Courts need not analyze these two steps in sequential order. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). For qualified immunity purposes, "clearly established law consists of holdings of the Supreme Court, the Eleventh Circuit, or the highest court of the relevant state." *Id.* (citation omitted). In other words, a right is said to be clearly established where there is: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citations omitted).

"A 'public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred"' to receive the benefit of qualified immunity

. . . After the defendant makes this showing, 'the burden shifts to the plaintiff to show that qualified immunity is not appropriate.'" *Sebastian*, 918 F.3d at 1307 (citations omitted). "[T]he term 'discretionary authority' includes all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Moore v. Pederson*, 806 F.3d 1036, 1042 (11th Cir. 2015) (citation and internal quotation marks omitted).

The Parties appear to be in agreement that Officer Wilson was acting within the scope of his discretionary authority when he, an Okeechobee County Sheriff's Deputy, assigned Plaintiff to a room once he was booked into the jail and responded to the incident when Plaintiff fell from the desk. (DE 25 at 17, DE 27 at 9). The burden therefore shifts to Plaintiff to establish that qualified immunity is not appropriate. Plaintiff has simply failed to meet his burden. Specifically, after removing the bare statements of law from the qualified immunity section of Plaintiff's Response to Officer Wilson's Motion to Dismiss, that section provides in full:

> [Officer Wilson's] contention that Plaintiff has not alleged [Officer Wilson] knew that [] Plaintiff suffered from an urgent medical need that would be exacerbated by delay is misplaced. Plaintiff alleged he advised [Officer Wilson] that he was injured and needed medical attention. Plaintiff additionally alleges he was refused treatment and told to remain lying on the floor with the mattress . . . Clearly, [Officer Wilson] knowingly refused medical attention requested by Plaintiff, a paraplegic who had just injured himself. Critically, Plaintiff alleges he continued to complain about pain in his legs and back before he eventually received medical attention . . . Thus, [Officer Wilson] is not entitled to qualified immunity where he knew Plaintiff had fallen from the desk and was complaining of pain but refused to provide the medical attention requested by Plaintiff.

*Id.* Not only does Plaintiff fail to even acknowledge the legal standard for qualified immunity, he also does not point to cases with facts similar to the facts of this case. Plaintiff's Response thus does not put forth any cogent argument in support of the assertion that Officer is not entitled to qualified immunity. Namely, Plaintiff has failed to point to any case holding that placing a disabled pretrial detainee in a temporary holding room on top of a mattress on a desk with no safety rails or

13

other assistive devices for less than 24 hours violates the Constitution. Nor does Plaintiff identify any case in which a constitutional violation was found where a disabled inmate fell from a bed, requested medical care, was initially denied medical care, but within less than 24 hours (and most likely substantially less time, though not specifically pled) was transported to a hospital for treatment.

Though it is not the Court's responsibility to make Plaintiff's arguments on his behalf, it likewise has found no such cases holding that constitutional violations occurred under inadequate conditions of confinement or deliberate indifference to medical need theories with facts closely analogous to those in the present case.[2] For instance, in *Brown v. Pastrana*, which presents a similar set of facts though is not directly on point because the plaintiff in that case was not disabled, the Eleventh Circuit held that it was not a constitutional violation under inadequate conditions of confinement and deliberate indifference to medical needs theories for an inmate to sleep eight feet off the ground without railings, which led to him falling while trying to climb down the ladder attached to the bunk bed. *Brown v. Pastrana*, 446 F. App'x 270, 273 (11th Cir. 2011). Thereafter, the defendants declined to provide emergency medical assistance to the plaintiff and instead instructed the plaintiff to wait for approximately an hour for medical staff to arrive at the facility. *Id.* In this case, Plaintiff's makeshift bed was presumably less than eight feet high, from which Plaintiff fell, suffered injuries, and was initially refused medical treatment. In light of *Brown* and in the absence of any other controlling authority clearly establishing that the factual situation at bar amounts to a constitutional violation, I find that Officer Wilson is entitled to qualified immunity.

---

[2] The Eleventh Circuit has observed that "if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019), *cert. denied*, 141 S. Ct. 110, 207 L. Ed. 2d 1051 (2020) (citation omitted).

Moreover, though the decision to place Plaintiff on a mattress on top of a desk was unintelligent and likely negligent, I do not find that it was "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d at 1291–92.

### III. "Americans with Disabilities Act § 202/42 U.S.C. § 12132" (Count IV)

To state a claim under Title II of the Americans with Disabilities Act ("ADA"), "a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity, or otherwise discriminated against by the public entity; (3) by reason of such disability." *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (citing 42 U.S.C. § 12132 (internal quotation marks omitted)). To prevail on a claim for compensatory damages under the ADA, "a plaintiff must show that a defendant violated his rights . . . with discriminatory intent." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014). A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights, which requires a showing of more than gross negligence. *Id.*

First, Plaintiff's ADA claim against Officer Wilson in his individual capacity fails as a matter of law, given that 42 U.S.C. § 12132 prohibits discrimination on the basis of disability by a "public entity," not persons acting in their individual capacities. *See Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005). The ADA claim against Officer Wilson in his official capacity is properly dismissed for the reasons set forth in Section II.B., *surpa*. As such, the ADA claim against Officer Wilson is dismissed with prejudice.[3]

---

[3] Indeed, Plaintiff concedes that Count IV "fails as to [Officer] Wilson in his individual capacity." (DE 33 at 9).

I also find that the allegations in the Amended Complaint against Sheriff Stephen in his official capacity fail to state a cause of action under the ADA. While Officer Wilson's decision to place Plaintiff on top of a mattress set on a desk in a room designated for attorneys to meet with their clients may very well have been negligent, there is no indication that the conduct complained of was intentionally discriminatory or exceeded gross negligence. As such, the ADA claim against Sheriff Stephens is due to be dismissed. Though I am highly doubtful that Plaintiff will be able to cure the deficiencies as to this Count, in an abundance of caution, I will dismiss the ADA claim against Sheriff Stephens without prejudice.

**IV. Declaratory and Injunctive Relief**

Sheriff Stephens argues that Plaintiff's request for declaratory and injunctive relief should be stricken based on "[t]he general rule [] that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief" even when "there is no assurance that he will not be returned to the jail." *McKinnon v. Talladega Cty., Ala.*, 745 F.2d 1360, 1363 (11th Cir.1984). The possibility that the plaintiff will be returned to the offending facility is not enough to overcome this general mootness rule when the chances of that coming to pass are too speculative. *See Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985). The Amended Complaint indicates that Plaintiff was held in pretrial detention for approximately 24 hours beginning on November 11, 2018. There are no assertions to suggest that Plaintiff has been re-detained or that the possibility of being rearrested and held at the Okeechobee County Jail rises above the speculative level. As such, I find that Plaintiff's requests for declaratory and injunctive relief are due to be stricken as moot.

**V. Punitive Damages**

Finally, Sheriff Stephens argues that the request for punitive damages against him is improper. (DE 22 at 13). "[A] municipality is immune from punitive damages under 42 U.S.C. § 1983," *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). In addition, under Florida law, a plaintiff may not pursue punitive damages against a municipality. *See* Fla. Stat. § 768.28(5). Moreover, punitive damages are not available in private actions brought under the ADA. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Thus, I will strike Plaintiff's request for punitive damages against Sheriff Stephen as to all counts.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

(1) Defendant Noel Stephens's Motion to Dismiss Counts II – IV of the Amended Complaint (DE 22) is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**.

(2) Defendant Brandon Wilson's Motion to Dismiss Counts I – IV of the Amended Complaint (DE 25) is **GRANTED**.

(3) As I have explained in analyzing the merits of these Motions to Dismiss, it is my sense that amendment may very well be futile given the applicable law and the pleading deficiencies I have identified in this Order. However, if Plaintiff wishes to continue pursuing this action with respect to those claims that I have dismissed without prejudice, he may file a Second Amended Complaint, **on or before June 25, 2021.** Any forthcoming amended complaint shall directly respond to the instructions set forth in the Order as they relate to the allegations that are lacking. Moreover, Plaintiff may not add any new defendants or claims, as Plaintiff has not sought and I have not granted

authorization to expand the scope of this action.

(4) The deadline to file dispositive motions will be reset upon the expiration of Plaintiff's deadline to amend.

**SIGNED** in Chambers at West Palm Beach, Florida, this 14th day of June, 2021.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record